IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHARLOTTE M. WALLACE | * |
| v. | * Civil Case No. RDB-13-1273 |
| COMMISSIONER, SOCIAL SECURITY | * |

************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions. ECF Nos. 10, 12. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that both motions be denied, and that the case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendations.

Ms. Wallace applied for Disability Insurance Benefits and Supplemental Security Income on May 13, 2007, alleging a disability onset date of May 4, 2007. (Tr. 267-76). Her claims were denied initially on July 31, 2007, and on reconsideration on December 18, 2007. (Tr. 194-95, 215-18). An Administrative Law Judge ("ALJ") held a hearing on March 19, 2009, (Tr. 158-93), and subsequently denied benefits to Ms. Wallace in a written opinion dated August 4, 2009. (Tr. 198-208). On March 22, 2011, the Appeals Council issued a decision remanding Ms. Wallace's case to the ALJ for further proceedings. (Tr. 209-12). The ALJ held a second hearing on October 7, 2011, (Tr. 100-57), and again denied benefits to Ms. Wallace in a second written opinion dated December 21, 2011. (Tr. 19-48). The Appeals Council then declined review, (Tr.

1-6), making the ALJ's 2011 decision the final, reviewable decision of the agency.

The ALJ found that Ms. Wallace suffered from the severe impairments of degenerative disc disease, degenerative joint disease of the bilateral knees, diabetes, and obesity. (Tr. 25). Despite these impairments, the ALJ determined that Ms. Wallace retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she would need to stand up for a few minutes after an hour of sitting before returning to sitting; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and cannot be exposed to hazards.

(Tr. 32). After considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Wallace was capable of performing her past relevant work. (Tr. 41). Accordingly, the ALJ determined that Ms. Wallace was not disabled. *Id.*

Ms. Wallace disagrees. She raises three primary arguments in support of her appeal: (1) that the ALJ failed to assign appropriate weight to the opinions of three treating physicians; (2) that the ALJ erred in making an adverse credibility finding; (3) and that the ALJ did not properly consider her obesity. I agree generally that the ALJ's analysis of the physicians' reports was deficient, and I therefore recommend that the case be remanded for further consideration. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Wallace is not entitled to benefits is correct or incorrect.

Specifically, Ms. Wallace contends that the ALJ did not appropriately consider the opinions of Drs. Greene, Jaworski, and Huang. Pl. Mot. 10-14. Dr. Greene's opinion is dated June 10, 2008, and it notes that he began treating Ms. Wallace in October of 2007. (Tr. 560-67). Dr. Jaworski's opinion is contained within his notes of his first examination of Ms. Wallace on October 7, 2008. (Tr. 675-76). Similarly, Dr. Huang issued his opinion on the date of his first examination of Ms. Wallace, February 23, 2011. (Tr. 665-72). Only Dr. Greene, then, could

2

potentially be considered to be a "treating physician," as opposed to a medical source akin to a consultative examiner. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2013) (noting that the ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability).

Even with that distinction, however, the ALJ's analysis of the physicians' opinions was inadequate. The ALJ listed eight identical reasons for rejecting each of the three opinions, with very little unique analysis sprinkled among the boilerplate language. (Tr. 38-40). Many of those eight reasons would be true for most examining physicians, such as a doctor's lack of opportunity to review all of the medical reports in the Social Security file, the unsubstantiated possibility that a doctor might express an opinion to try to assist a patient, and the equally speculative possibility that a doctor might be unfamiliar with the definition of disability and might be referring only to a patient's inability to do past work. *Id.* When the ALJ did provide some fact-specific analysis pertaining to one of the doctors' opinions, the analysis often did not comport with the evidence of record. For example, the ALJ stated that Dr. Greene's treatment of Ms. Wallace was not consistent with disability, because "[i]n August 2008 his only recommendation was to prescribe Etodolac, a non-narcotic non-steroidal anti-inflammatory medication." (Tr. 39). However, Dr. Greene's report from that date clearly evidences not only the prescription but a referral to Dr. Jaworski, an orthopedic specialist, as part of the treatment plan. (Tr. 683). The ALJ correctly notes that the report from Dr. Huang contains inconsistent conclusions, some suggestive of disability and others indicating that Ms. Wallace could perform work. (Tr. 40). However, despite his acknowledgement of those flaws in Dr. Huang's analysis, the ALJ uses snippets from Dr. Huang's opinion to suggest that Dr. Jaworski's opinion "contrasts sharply with and is not supported by the other evidence of record, which obviously

renders it less persuasive." (Tr. 39). The opinions from Drs. Greene and Jaworski, in particular, strongly suggest that Ms. Wallace would be unable to sustain even sedentary employment, particularly if the position required her to sit for almost an hour at a time. *See, e.g.,* (Tr. 562, 565) (Greene opinion that Ms. Wallace will need to get up and move around every ten minutes, that she will need to take unscheduled breaks to rest "several times per hour," and that her symptoms would frequently interfere with attention and concentration); (Tr. 675-76) (Jaworski opinion stating, "Presently, with her multiple medical problems, I do not believe she can physically work. The knees are too painful, they do not allow her to sit, stand for a protracted period of time. If she sits for a long time, the knees stiffen up so precipitously that she cannot move."). In light of that discrepancy between the two physicians' opinions and the RFC assessment by the ALJ, the ALJ was required to provide an adequate, non-boilerplate, fact-specific explanation of the contradictory evidence supporting his conclusion that Ms. Wallace is in fact able to sit for hour-long increments during an eight-hour workday. In the absence of such an explanation, remand is warranted.

Ms. Wallace's other arguments are less persuasive. The ALJ applied the appropriate standard to assess Ms. Wallace's credibility (Tr. 33-37), and cited to substantial evidence to support the adverse credibility assessment. Moreover, it is clear from the opinion as a whole that the ALJ did consider Ms. Wallace's obesity throughout the evaluation process. (Tr. 27, 32). Ms. Wallace does not cite to any functional limitations specific to her obesity that the ALJ failed to address. However, because the case is being remanded on other grounds, on remand, I also recommend that the ALJ incorporate an express discussion of Ms. Wallace's obesity into the section of the opinion addressing Ms. Wallace's RFC.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 12);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 10); and

3. the Court order the Clerk to REMAND the case to the Commissioner for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b)(2) and Local Rule 301.5.b.


Dated: February 4, 2014                                    /s/
                                                    Stephanie A. Gallagher
                                                    United States Magistrate Judge